JC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Aleksandre Chaduneli,
Petitioner,
v.
Todd Blanche, et al.,
Respondents.

No. CV-26-01697-PHX-AMM (JFM)

**ORDER**

On March 12, 2026, Petitioner Aleksandre Chaduneli filed this action under 28 U.S.C. § 2241 challenging his immigration detention.[1] (Doc. 1.) On April 7, 2026, the Court screened the Petition, dismissed Count Two and one Respondent, and required Respondents to answer Count One. (Doc. 7.) Upon review of the briefing and considering Petitioner's approximately 21-month detention, the Court will grant the Petition in part and order that Petitioner receive an individualized bond hearing within seven days.

## I. Background

Petitioner is a citizen of Georgia. (Doc. 10-2 at 1.) On December 6, 2024, he applied for admission to the United States at the San Ysidro Port of Entry in California. (*Id.* at 2.) The Form I-213 prepared that day states Petitioner "is a CBP One applicant and is seeking asylum," he "presented a passport book as proof of citizenship," he "does not have any admissible documents to enter, pass through, or reside in the United States," and he

[1] Petitioner thereafter filed a Motion Requesting an Individualized Bond Hearing (Doc. 17) and a Supplemental Motion for an Individualized Bond Hearing and Expedited Consideration (Doc. 18).

"expressed fear or concern of returning to Georgia or being removed from the United States." (*Id.*) Records checks were negative, and the form lists no criminal record. (*Id.* at 1–2.) Petitioner identified a cousin in Brooklyn, New York as his contact and New York as his intended destination. (*Id.* at 2.)

Petitioner was taken into U.S. Department of Homeland Security ("DHS") custody the same day and has remained in DHS custody since December 6, 2024.[2] (*Id.* at 1–2; Doc. 10-1 at 6.) DHS did not release Petitioner on parole, bond, or any other basis. (Doc. 10 at 1; Doc. 14 at 1.) Petitioner was placed in traditional removal proceedings pursuant to 8 U.S.C. § 1229a and was charged as an arriving alien deemed inadmissible under the Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I), codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I). (Doc. 10-1 at 1, 4.) Petitioner is presently confined at the San Luis Regional Detention Center in San Luis, Arizona. (Doc. 1 at 3, 8.)

Petitioner filed an application for asylum, withholding of removal, and protection under the Convention Against Torture. (Doc. 14 at 1.) An Immigration Judge ("IJ") heard Petitioner's applications on July 25, 2025 and January 13, 2026. (*Id.* at 1–2.) On January 13, 2026, the IJ denied relief and ordered Petitioner removed. (Doc. 10 at 1.)

On January 20, 2026, Petitioner, through counsel, appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). (Doc. 10-3 at 1.) That appeal remains pending before the BIA. (Doc. 10 at 1-2; Doc. 18 at 3.)

**II. 28 U.S.C. § 2241 Writ of Habeas Corpus**

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States . . . ." 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ" make clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure

---

[2]The Petition alleges that Petitioner "has been continuously detained by ICE since June 7, 2025." (Doc. 1 at 3.) Respondents' exhibits establish, and Petitioner's later filings confirm, that his custody began on December 6, 2024. (Doc. 10-2 at 1–2; Doc. 14 at 1; Doc. 18 at 3, 5.) The Court will use the December 6, 2024 date.

release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'" (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807))); *cf. In re Kaine*, 55 U.S. (14 How.) 103 (1852) (applying the writ of habeas corpus in the immigration context). The Supreme Court has made clear that § 2241 applies to noncitizens challenging their immigration detention.[3] *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

Because Petitioner only challenges his prolonged civil detention, the Court has jurisdiction to address the instant Petition. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order . . . .").

## III. Discussion

Petitioner asserts that his prolonged detention without a bond hearing violates due process under the Fifth Amendment. (Doc. 1 at 5.) Respondents argue Petitioner is permissibly detained under 8 U.S.C. § 1225(b)(2)(A). (Doc. 10 at 2–6.) They further argue that *Jennings v. Rodriguez*, 583 U.S. 281 (2018), forecloses any statutory right to release on bond, and that Petitioner, as a noncitizen who has not effected an entry into the United States, "is entitled only to those procedures granted by statute."[4] (*Id.*)

---

[3] The Court will use the term "noncitizen" unless a quoted statute or court decision uses the term "alien." This usage is congruent with Ninth Circuit precedent. *See, e.g.*, *Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023) (noting the Supreme Court commonly uses "noncitizen," a term that is synonymous with "alien" while "avoid[ing] language that reasonable readers might find offensive or distracting").

[4] Respondents request the Court dismiss all Respondents other than Warden David Rivas. (Doc. 10 at 1–2.) "[I]n habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *see also Doe v. Garland*, 109 F.4th 1188, 1195–96 (9th Cir. 2024). However, *Padilla* and *Doe* enforce that rule against petitioners who fail to name their immediate custodian at all, and each observes that there is generally "only one proper respondent." *Padilla*, 542 U.S. at 434; *Doe*, 109

**A. Statutory Basis for Petitioner's Detention**

"A noncitizen's place 'within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.'" *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (quoting *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008)). Here, Petitioner asserts that he "is currently detained pursuant to 8 U.S.C. § 1226(a)." (Doc. 14 at 1.) In his Supplemental Motion, Petitioner further argues that the Ninth Circuit's recent decision in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), establishes that his detention is governed by § 1226(a), under which bond may be available. (Doc. 18 at 3–6.) Respondents assert that Petitioner is an applicant for admission detained pursuant to § 1225(b)(2)(A). (Doc. 10 at 2–5.)

The Court agrees with Respondents. "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Section 1225(b)(2)(A) provides that, subject to exceptions not relevant here, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Sections 1225(b)(1) and (b)(2) "unequivocally mandate that aliens falling within their scope 'shall' be detained . . . . until certain proceedings have concluded." *Jennings*, 583 U.S. at 300, 303.

Here, Petitioner sought entry into the United States at the San Ysidro Port of Entry. He was charged as an "arriving alien" and detained under §1229a after an examining officer determined that he was not clearly and beyond a doubt entitled to be admitted. Petitioner was not "already present in the United States" when he was detained.

---

F.4th at 1195. Petitioner named his immediate custodian, Warden Rivas, in the district of confinement. The Court, therefore, declines to dismiss the remaining Respondents.

*Rodriguez Vazquez* is inapplicable. The plaintiffs in that case were "a class of unadmitted aliens apprehended in the interior of the United States." 183 F.4th at 1169. The Ninth Circuit held that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Id.* at 1165. The court explained that § 1225(b)(2)(A) "is best construed as applying to aliens entering the United States at the border." *Id.* at 1172. "Seeking admission most naturally refers to a particular point in time, namely, the time an alien 'com[es] from outside' into the United States." *Id.* at 1178 (quoting *Torres v. Barr*, 976 F.3d 918, 924 (9th Cir. 2020) (en banc)).

Further, because Petitioner's appeal remains pending before the BIA, Petitioner does not have an administratively final order of removal. *See* 8 U.S.C. § 1101(a)(47)(B) (an order becomes administratively final "upon the earlier of (i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals"). The removal period under 8 U.S.C. § 1231 has therefore not begun, and *Zadvydas*'s post-removal-order framework does not apply. *See Prieto-Romero*, 534 F.3d at 1059–60. As such, § 1225(b)(2)(A) continues to govern Petitioner's detention in this action, and Petitioner has no statutory right to a bond hearing. *Jennings*, 583 U.S. at 303; 8 C.F.R. § 1003.19(h)(2)(i)(B).

**B. Due Process**

The Court now turns to Petitioner's due process claim.

**1. Liberty Interest**

The Court must assess "whether there exists a liberty or property interest of which a person has been deprived, and if so, whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). "A liberty interest may arise from the Constitution itself . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). While due process is a flexible concept, "[i]ts flexibility is in its scope

once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

Here, Respondents present an entry-fiction doctrine and argue that Petitioner's sole liberty interest is in the procedures contained within the INA, which do not include a bond hearing for noncitizens held pursuant to § 1225(b)(2)(A). (Doc. 10 at 5–6.) They rely on *Wong v. Immigration & Naturalization Service*, 373 F.3d 952 (9th Cir. 2004), *abrogated on other grounds as recognized by Pettibone v. Russell*, 59 F.4th 449, 455–56 (9th Cir. 2023) to argue that "[e]ven if Petitioner were entitled to an individualized explanation for the revocation of parole, . . . no court has jurisdiction to review Section 1182(d)(5) parole determinations." (*Id.* at 6.) In *Wong*, the Ninth Circuit addressed whether a noncitizen has a liberty interest in temporary parole. *See Wong*, 373 F.3d at 967. The court found that "[t]he INA does not create any liberty interest in *temporary parole* that is protected by the Fifth Amendment." *Id.* at 968 (emphasis added). "Rather, the statute makes clear that whether and for how long temporary parole is granted are matters entirely within the discretion of the Attorney General." *Id.*

The Court finds that Respondents' reliance on *Wong* is misplaced. The record does not reflect that Petitioner was ever paroled, and Petitioner does not assert a liberty interest in temporary parole. Rather, Petitioner asserts a constitutional liberty interest in release from DHS custody or, alternatively, a bond hearing. (Doc. 1 at 7; Doc. 14 at 1.) The Court declines to conflate temporary parole with a request for a bond hearing before a neutral decisionmaker.

Nor does the Court find that the entry-fiction doctrine forecloses Petitioner's due process claim as to his present detention. The entry-fiction doctrine is based upon the "distinction between those aliens who have come to our shores seeking admission, such as petitioner, and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). The Supreme Court has noted that the latter category of noncitizens has "additional rights and privileges not extended to

those in the former category who are merely 'on the threshold of initial entry.'" *Id.* (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)). A noncitizen on the threshold of initial entry, though physically present within the country, is "still in theory of law at the boundary line" and has "gained no foothold in the United States." *Zadvydas*, 533 U.S. at 693 (quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925)).

Other district courts have found that the entry-fiction doctrine solely applies to the procedural rights of noncitizens regarding *admission*, not every procedure occurring in the immigration context (i.e., the entry-fiction doctrine is inapplicable to challenges to the length of a petitioner's detention). *See, e.g.*, *D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102, 150 (D. Mass. 2026).[5] Where an immigration detainee challenges neither his removal order nor any of the processes that produced it, his claims "do not implicate, nor even 'relate[ ] to,' the issue of [his] admissibility." *See D.V.D.*, 821 F. Supp. 3d at 151 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)); *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (noting that when a petitioner "do[es] not challenge the admission process in any way or assert a right to remain in the United States," the entry-fiction doctrine is inapplicable). Neither a bond hearing nor release from detention relates to the issue of admissibility. *See Rincon v. Hyde*, 810 F. Supp. 3d 101, 107 (D. Mass. 2025). "Thus, Petitioner does not purport to invoke any 'rights regarding admission.'" *Id.* at 110 (quoting *Thuraissigiam*, 591 U.S. at 140); *D.V.D.*, 821 F. Supp. 3d at 151 ("It makes sense to distinguish between 'rights regarding admission' and other interests that might be protected by the Due Process Clause." (citing *Thuraissigiam*, 591 U.S. at 140)). Instead, Petitioner is a "'person[]' within the United States," and the Fifth Amendment therefore "imposes constraints" on any process that deprives him of his liberty interests. *D.V.D.*, 821 F. Supp. 3d at 150.

---

[5]Although *D.V.D.* is an out-of-circuit decision that is currently stayed by the First Circuit, the Court is nonetheless persuaded by its analysis. Furthermore, other courts within the District of Arizona have relied upon *D.V.D.* *See Guevara Serrano v. Bondi*, No. CV-26-00110-PHX-DJH, Doc. 15 at 3 (D. Ariz. Mar. 9, 2026).

Therefore, the Court finds that Petitioner has identified a liberty interest in his freedom from prolonged detention because "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

**2. Due Process Rights Regarding Petitioner's Prolonged Detention**

"Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention for noncitizens detained pursuant to 8 U.S.C. § 1225." *Haidari v. Immigr. & Customs Enf't Field Off. Dir.*, No. 2:26-cv-00039-TL, 2026 WL 764689, at *3 (W.D. Wash. Mar. 18, 2026). "However, 'nearly all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" *Id.* (quoting *Maliwat v. Scott*, No. C25-788, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025)).

Petitioner, who is proceeding pro se, does not identify the framework that governs his prolonged-detention due process claim, and Respondents do not address the question. (*See* Docs. 1, 10, 14.) The test applied varies among courts in this circuit and beyond. *See Doe v. Andrews*, No. 1:25-cv-00333-JLT-HBK, 2026 WL 797694, at *9–*11 (E.D. Cal. Mar. 23, 2026) (applying the 3-factor test from *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022)); *see also Galkin v. Scott*, No. 2:26-cv-00530-TLF, 2026 WL 632663, at *2–*5 (W.D. Wash. Mar. 6, 2026) (applying the 6-factor test from *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019)); *Leonteva v. Noem*, No. 4:26-cv-00043-SEB-KMB, 2026 WL 851289, at *2–*4 (S.D. Ind. Mar. 27, 2026) (applying the same 6 factors but citing *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)); *L.S. v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-3598-LL-BJW, 2026 WL 143150, at *4–*5 (S.D. Cal. Jan. 20, 2026) (applying the 3-factor test from *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

"While the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." *Banda*, 385 F. Supp. 3d at 1118. Put differently, the *Mathews* test is apt where the question is whether an administrative procedure provided is "constitutionally sufficient," but "[i]t does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided."[6] *Id.* at 1106–07. Moreover, the *Lopez* test "concern[s] due process challenge[s] to mandatory detention under § 1226(c), [and] the factors enumerated there are, in essence, a truncated version of the factors enumerated in *Banda* . . . ." *Andrews*, 2026 WL 797694, at *10. Accordingly, the Court finds the *Banda* test the most applicable to the present situation.

Under the *Banda* test, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda*, 385 F. Supp. 3d at 1118. The Court will address each of these factors in turn.

**a. Length of Detention**

The length of detention "is the most important factor." *Banda*, 385 F. Supp. 3d at 1118. "It is important to bear in mind the context: The detention that is being examined here is the detention of a human being who has never been found to pose a danger to the

---

[6] Nevertheless, the Court finds the outcome applying *Mathews* and *Banda* would be the same—i.e., Petitioner would be entitled to an individualized bond hearing because (1) Petitioner has a strong private interest in his liberty from prolonged civil detention, *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017); (2) a large risk of erroneous deprivation exists in the absence of an individualized bond hearing, *see Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013); and (3) the government interest in detaining Petitioner without an individualized bond hearing is low, *see Jensen v. Garland*, No. 5:21-CV-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023); *Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025).

community or to be likely to flee if released." *Id.* (quoting *Jamal A.*, 358 F. Supp. 3d at 859). Beyond a six-month threshold, "detentions become less and less reasonable." *Haidari*, 2026 WL 764689, at *3 (quoting *L.B.O.M. v. Hermosillo*, No. 2:25-cv-02695-GJL, 2026 WL 266068, at *3 (W.D. Wash. Feb. 2, 2026)).

Here, Petitioner has been detained for approximately 21 months. This is well beyond the six-month threshold and well beyond the length of confinement other courts have found to be prolonged. *See, e.g.*, *Abdul Kadir v. Larose*, No. 25-cv-1045-LL-MMP, 2025 WL 2932654, at *5 (S.D. Cal. Oct. 15, 2025) (noting that detention for 13 months without a bond hearing is prolonged); *Banda*, 385 F. Supp. 3d at 1118 ("Petitioner has been in detention for approximately 17 months, which is a very long time."); *Salamakhin v. Noem*, No. CV-26-00330-PHX-AMM (MTM), 2026 WL 1250296, at *7 (D. Ariz. May 6, 2026) (ordering a bond hearing for a petitioner detained approximately 20 months under § 1225(b)(2)). Considering these decisions, and based upon the present facts, the Court finds the length of Petitioner's detention strongly favors granting relief.

**b. Likely Duration of Future Detention**

The second factor requires the Court to "consider[] how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Akmal v. Warden of Cal. City Det.*, No. 1:25-CV-01921-DC-DMC-HC, 2026 WL 657606, at *7 (E.D. Cal. Mar. 9, 2026) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)).

While the length of future detention is uncertain considering Petitioner's pending appeal before the BIA, the Court finds that the likely duration of future detention is sufficiently lengthy for this factor to favor Petitioner. The record does not indicate when the BIA will decide the appeal, and, if the BIA dismisses the appeal, Petitioner may petition the Ninth Circuit for review. *See Kadir*, 2025 WL 2932654, at *5.

**c. Conditions of Detention**

The third factor requires the Court to consider the conditions of confinement. *Banda*, 385 F. Supp. 3d at 1119. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted).

Petitioner alleges, under penalty of perjury, that he contracted scabies at the San Luis Regional Detention Center and has not received adequate treatment. (Doc. 1 at 3–4, 7; Doc. 6.) Respondents do not address the allegation. While Petitioner cannot challenge the conditions of his confinement in this habeas corpus action (Doc. 7 at 2–3), those conditions are relevant to whether his detention is unconstitutionally prolonged. The Court makes no finding on the merits of the dismissed conditions claim but finds that this factor modestly favors Petitioner.

**d. Delays in Removal Proceedings**

Next, the Court analyzes the "fourth and fifth [*Banda*] factors—both [of] which consider delays caused by the parties—together." *Maliwat*, 2025 WL 2256711, at *6. The fourth factor requires the Court to consider the nature and extent of any delays caused by Petitioner. "Courts should be 'sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his incarceration.'" *Banda*, 385 F. Supp. 3d at 1119 (citation omitted).

In the instant action, Petitioner has appealed the IJ's decision denying his asylum claim and ordering his removal. While it is true that Petitioner has delayed his own removal, the Court does not find that this was a dilatory tactic aimed at extending his detention so he could then seek release. Regardless, based on a review of our sister districts' caselaw, the Court is persuaded that a petitioner "should not be effectively punished through indefinite detention for exercising [his] right to appeal [his] removal order." *Yuehui Chen v. Noem*, No. 5:26-CV-00397-SSS-DTB, 2026 WL 425694, at *6 (C.D. Cal. Feb. 13, 2026); *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) (citation

omitted) ("But the government's suggestion that Petitioner's choice to appeal adverse rulings weighs against any constitutional claim that he may make regarding his detention during the course of the appeal is untenable, and the Court will not require that a petitioner who pursues his available legal remedies must forego any challenge to the reasonableness of his detention in the interim."); *Barraza v. ICE Field Off. Dir.*, No. C23-1271-BHS-MLP, 2023 WL 9600946, at *6 (W.D. Wash. Dec. 8, 2023), *report and recommendation adopted sub nom. Barraza v. U.S. Immigr. & Customs Enf't Field Off. Dir.*, No. C23-1271 BHS, 2024 WL 518945 (W.D. Wash. Feb. 9, 2024) (citing *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 965 (D. Minn. 2019)) ("Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable."). Hence, the fourth factor is neutral.

The fifth factor considers the delays in removal caused by the government. *Banda*, 385 F. Supp. 3d at 1120. "[I]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable . . . . Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." *Galkin*, 2026 WL 632663, at *4 (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10–*11 (S.D.N.Y. May 23, 2018)). While Petitioner's appeal has caused a delay in his removal, "any delay in this case is a product of the BIA's . . . crowded docket[], which courts typically attribute to the Government—not the Petitioner." *Id.* (quoting *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 923 (W.D. Wash. 2020)). Hence, the fifth factor slightly favors Petitioner.

**e. Likelihood of Removal**

The final *Banda* factor requires the Court to consider "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Sajous*, 2018 WL 2357266, at *11). The IJ denied relief and ordered Petitioner removed, and Petitioner's appeal from that decision is pending. Based on the current

record, "the Court lacks sufficient information to comment on the potential merits of [P]etitioner's pending appeal." *Galkin*, 2026 WL 632663, at *4. Therefore, the sixth factor is neutral.

**vi. Conclusion**

Therefore, having considered the *Banda* factors, the Court concludes that Petitioner's continued detention under § 1225(b)(2)(A) has become unreasonable, and Petitioner is entitled to relief.

**C. Remedy**

Where a noncitizen's detention under § 1225(b)(2) has become unreasonable, the proper remedy is an individualized bond hearing before a neutral IJ. *See Galkin*, 2026 WL 632663, at *5; *see also Lopez*, 631 F. Supp. 3d at 882 ("The Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an [IJ] rather than immediate release."); *Kaur v. Lyons*, No. 2:26-cv-00217-KML, 2026 WL 963792, at *1 (D. Ariz. Apr. 9, 2026) (adopting the magistrate judge's recommendation that a petitioner detained under § 1225(b)(2) be granted a bond hearing); *Salamakhin*, 2026 WL 1250296, at *8 (ordering petitioner be granted a bond hearing after an unreasonably prolonged detention under § 1225(b)(2)).

At the bond hearing, Respondents bear the burden of proving that Petitioner is a danger or flight risk by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011). Petitioner's Motion Requesting an Individualized Bond Hearing (Doc. 17) and a Supplemental Motion for an Individualized Bond Hearing and Expedited Consideration (Doc. 18) both request this relief. His Supplemental Motion expressly disclaims any request that the Court "determine a specific bond amount, order his unconditional release without appropriate proceedings, or predetermine the outcome of the bond determination." (Doc. 18 at 4.) To the extent the Petition seeks immediate release, it is denied.

///

///

Accordingly,

**IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **GRANTED** as to Petitioner's request for a bond hearing and **DENIED** as to Petitioner's request for immediate release. (Doc. 1.)

**IT IS FURTHER ORDERED** that a bond hearing shall be held within **seven (7) calendar days** of the date this Order is filed. The **bond hearing** shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). There must be a contemporaneous record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community; or, in the alternative, the Government shall immediately release Petitioner under appropriate conditions of release.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report with the Court regarding (a) the bond hearing and whether the Petitioner was released within **three (3) days** of the bond hearing, or, (b) in the alternative, informing the Court that Petitioner has been released.

**IT IS FURTHER ORDERED** that Petitioner's Motion Requesting an Individualized Bond Hearing (Doc. 17) and Supplemental Motion for an Individualized Bond Hearing and Expedited Consideration (Doc. 18) are **GRANTED** to the extent they seek an individualized bond hearing and are otherwise **DENIED AS MOOT**.

Dated this 4th day of September, 2026.

Honorable Angela M. Martinez
United States District Judge